People v J.J. (2024 NY Slip Op 50687(U))

[*1]

People v J.J.

2024 NY Slip Op 50687(U)

Decided on June 7, 2024

Youth Part, Erie County

Freedman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 7, 2024
Youth Part, Erie County

The People of the State of New York

against
J.J. AO.

Docket No. FYC-71344-24/001

Denise Herman, Esq., (Assistant District Attorney) Seth Seegert, Esq., (for the Principal AO J.J.)

Brenda M. Freedman, J.

The People having moved pursuant to Criminal Procedure Law, Article 722, § 722.23(1), et seq. for an order preventing removal of this action to the juvenile delinquency part of Erie County Family Court, and upon reading the Notice of Motion and Supporting Affidavit of Denise Herman, Esq. (Assistant District Attorney), dated May 24, 2024; responsive papers by Seth Seegert, Esq. on behalf of AO J.J., dated May 31, 2024; a Supplemental Notice of Motion by Denise Herman, Esq., dated June 3, 2024; oral argument and a hearing on the motion having been waived; and due deliberation having been had, the Court finds the following:
Procedural History
AO J.J. is charged under FYC-71344-24 with one count of Criminal Possession of Stolen Property in the Third Degree in violation of Penal Law § 165.50 & 20.00, a class D felony, and Unauthorized Use of a Motor Vehicle in the Third Degree in violation of Penal Law § 165.05(01) & 20.00, a class A misdemeanor. Accessible Magistrate Diane Y. Wray arraigned AO J.J. on April 26, 2024 and released him on his own recognizance. On April 29, 2024, this Court arraigned AO J.J. and released him under probation supervision. On May 1, 2024, this Court held the six-day reading. The People conceded the reading. This Court found that the charges did not meet the requirements of CPL § 722.23(2)(c) to remain in Youth Part. The People indicated that they would make a motion under CPL § 722.23(1) requesting that this matter not be removed to Family Court. The Court scheduled a decision on the motion on June 7, 2024.
On May 13, 2024, Probation submitted a Notice of Failure to Comply with the Release Under Supervision Program. The Notice stated that on May 9, 2024, AO J.J. was rearrested and charged with Criminal Possession of a Firearm following a raid on his home where a loaded firearm was found. The Notice also stated that AO J.J. had repeatedly violated his Court ordered curfew. This Court continued AO J.J.'s release under supervision and adjourned the case to June [*2]7, 2024, as previously scheduled.
On May 9, 2024, AO J.J. was formally charged under FYC-71491-24 with one count of Criminal Possession of a Firearm in violation of Penal Law § 265.01-B(01), a class E felony. This Court arraigned AO J.J. and remanded him without bail. On May 13, 2024, this Court held the six-day reading and a felony hearing. The People conceded the reading, and this Court found that the charges did not meet the requirements of Criminal Procedure Law § 722.23(2)(c) to remain in Youth Part. A felony hearing was also held on May 13, 2024. This Court found that there was not reasonable cause to believe that AO J.J. committed a felony, and that matter was to be transferred to Family Court pursuant to Criminal Procedure Law § 722.21(3)(b). AO J.J. was released on FYC-71491-24 on his own recognizance.
On May 26, 2024, AO J.J. was charged under FYC-71777-24 with Grand Larceny in the Second Degree in violation of Penal Law § 155.40(1) for allegedly participating in the theft of another vehicle. This matter is scheduled for arraignment on June 7, 2024.
On May 29, 2024, AO J.J. was charged under FYC-71776-24 with Criminal Possession of Stolen Property in the Fourth Degree in violation of Penal Law § 165.45(5) and Unauthorized Use of a Vehicle in the Third Degree in violation of Penal Law § 165.05(1) for being involved in the theft of yet another vehicle. This matter is also scheduled for arraignment on June 7, 2024.
On May 30, 2024, this Court received a second Notice of Failure to Comply with the Release Under Supervision Program on FYC-71344-24. The Notice mentioned the May 29, 2024 incident and informed the Court that AO J.J. continued to violate his Court ordered 8:00 PM to 7:30 AM curfew, having left the house at night three times that week. On June 3, 2024, this Court continued supervision and adjourned the case to June 7, 2024.
Findings of Fact
It is alleged that on April 26, 2024, at approximately 9:30 AM, AO J.J. and four co-defendants had in their possession and under their control a stolen gray Kia Sportage vehicle. On that date, two police officers were on patrol when they received a call for reckless operation. They witnessed two SUVs, including a gray Kia Sportage, take off at a high rate of speed after noticing their marked patrol vehicle. The officers began following the Kia Sportage; they ran the Kia's license plate and learned that it was a stolen vehicle.
At approximately 9:34 AM that day, the Sheriff's Office Air 1 helicopter was in the air for a training mission. Sheriffs in the helicopter were advised that police had observed a stolen gray Kia Sportage. Air 1 successfully located and tracked the stolen vehicle for 30 to 45 minutes. They witnessed the stolen vehicle fail to stop for traffic lights and/or devices, cross the double yellow lines a couple of times, pass vehicles by driving into oncoming lane when there was a double solid yellow line, and fail to stop for police vehicles even when a marked police vehicle attempted to stop the Kia Sportage. The Sheriffs in Air 1 then saw the Kia come to a stop, and the occupants fled the vehicle. They saw AO J.J. exit the back passenger driver side door.
With the help of Air 1, officers on the ground ascertained the specific location where multiple suspects had bailed from the stolen Kia Sportage and began running through residential backyards. Officers saw AO J.J. running and followed him. One officer took him into custody. When that officer asked AO J.J. for his name, AO J.J. responded that the officer knew his name. The Officer agreed; he did know AO J.J.'s name from prior incidents. Just two days earlier the Officer found AO J.J. sleeping in the driver's seat of a stolen vehicle and three other individuals sleeping in the passenger seats of the vehicle. The Officer had approached the stolen vehicle and [*3]attempted to open the front passenger door, but it was locked, and the occupants of the vehicle refused to exit. After multiple commands to get out, the Officer broke a window to remove the occupants from illegally occupying the vehicle. AO J.J. and his co-defendants were charged with a misdemeanor.
Officers later found the Kia Sportage at the location reported by Air 1. There were clear signs that it had been stolen. The vehicle was still running. No key was in the ignition. The steering column was ripped open. The owner of the Kia Sportage never gave AO J.J. or his co-defendants permission to operate, ride in or otherwise use his vehicle.
Conclusions of Law
Pursuant to CPL § 722.23(1)(a), the Court shall order removal of the action to Family Court unless, within 30 days of arraignment, the District Attorney makes a written motion to prevent removal of the action. 
Pursuant to CPL § 722.23(1)(d), the Court shall deny the district attorney's motion to prevent removal unless the Court determines that extraordinary circumstances exist that should prevent the transfer of the action to Family Court. CPL § 722.23 does not define the term "extraordinary circumstances".
In People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021), the Court referenced the common dictionary and the legislative history of the Raise the Age legislation and interpreted "extraordinary circumstances" to mean that "the People's Motion Opposing Removal must be denied unless they establish the existence of an 'exceptional' set of facts which 'go beyond' that which is 'usual, regular or customary' and which warrant retaining the case in the Youth Part instead of removing it to the Family Court."
New York State Assembly members debating the Raise the Age legislation indicated that the extraordinary circumstances requirement was intended to be a "high standard" for the District Attorney to meet, and denials of transfers to Family Court "should be extremely rare". NY Assembly Debate on Assembly Bill A03009C, Part WWW, at 39, April 8, 2017; see also, People v S.J., 72 Misc 3d 196 (Fam Ct 2021). "[T]he People would satisfy the 'extraordinary circumstances' standard where 'highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in the family court'. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021) citing Assembly Record, p. 39.
The legislators indicated that in assessing "extraordinary circumstances", the Judge should consider the youth's circumstances, including both aggravating factors and mitigating circumstances. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021); Assembly Record, pp. 39 to 40. Aggravating factors make it more likely that the matter should remain in Youth Part, and mitigating circumstances make it more likely that the matter should be removed to Family Court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days, (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes before the court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record, p. 40.
Mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of [*4]positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record at 40. This Court considered only those exhibits and documents whose content fall within the mandate of CPL § 722.23(1)(b) in making this decision.
This Court determines that extraordinary circumstances exist that should prevent the transfer of this action to Family Court. AO J.J. was involved in a series of crimes with multiple co-defendants within a short time span. He had five arrests between April 2024 and May 2024, including riding in or driving two stolen vehicles in two days. The People allege that approximately one week later, AO J.J. was seen posting himself on social media with a firearm. Upon execution of a search warrant, a firearm was found in his home and AO J.J. and his father were arrested. Then, at the end of May, AO J.J. was arrested two more times on charges related to stolen vehicles. Moreover, in the instant matter, AO J.J. ran from the stolen vehicle after being tracked by a helicopter for more than 30 minutes to avoid apprehension by law enforcement. The People clearly met their burden of proving that this young person is not amenable to, nor would benefit in any way from, the heightened services in Family Court. AO J.J. continued to have police contact after repeated arrests, receipt of probation services, and being remanded to a specialized secure juvenile detention facility. Probation filed two notices of failure to comply. The rehabilitative services available in Family Court will not be sufficient for this youth.
Extraordinary circumstances exist to prevent the transfer of this action to Family Court. The People met its burden to prevent removal of this action to Family Court. This matter shall remain in Youth Part.
This constitutes the opinion, decision, and order of this Court.
SO ORDERED.
ENTER,
_____________________________________
HON. BRENDA M. FREEDMAN